IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STIFEL, NICOLAUS & COMPANY, INC.,

                            Plaintiff,　　　　　　　　　　　OPINION & ORDER

   v.

                                          13-cv-121-wmc

LAC COURTE OREILLES BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS OF WISCONSIN,

                        Defendant.

       Plaintiff Stifel, Nicolaus & Company, Inc. ("Stifel") seeks equitable reformation of its Bond Purchase Agreement with defendant Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin (the "Band"), as well as a declaratory judgment that the Band may not proceed to sue Stifel in a currently-pending action in Lac Courte Oreilles Tribal Court.  Before the court now is plaintiff's motion for summary judgment on both claims.  (Dkt. #37.)  Based on the undisputed facts of record, the court holds that Stifel is entitled to reformation of the Bond Purchase Agreement, but also concludes that the Band may proceed with its pending claims against Stifel in Lac Courte Oreilles Tribal Court. Although Stifel has had ample opportunity to do so already, because the Band did not affirmatively move for summary judgment, the court will give Stifel yet another opportunity to proffer additional evidence, if any, that the forum selection clause in the Bond Purchase Agreement clearly precludes the Band from proceeding in Tribal Court.

UNDISPUTED FACTS[1]

## I. Background

Defendant Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin is a federally recognized Indian Tribe organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 *et seq.* In December of 2006, the Band issued and sold two series of bonds, the 2006A Bonds and the 2006B Bonds (collectively, "the 2006 Bonds"). The proceeds from the sale were used to fund various projects, including refinancing certain bonds the Band had previously issued in 2003 ("the 2003 Bonds").

The 2006 Bonds were issued and sold pursuant to SEC Rule 144A, exempting them from registration requirements under federal securities law. Pursuant to that rule, Stifel acted as the Initial Purchaser of the 2006 Bonds and could resell them to qualified institutional buyers.

In connection with this 2006 transaction, the Band issued a Preliminary Limited Offering Memorandum, dated December 7, 2006; a Limited Offering Memorandum, dated December 15, 2006; and Resolution No. 06-110, adopted on December 15, 2006, approving the issuance of the 2006 Bonds. The Band also entered into various agreements, including a Trust Indenture with Wells Fargo Bank, N.A., dated December 1, 2006, establishing a schedule for the Band to repay principal and interest on the bonds; and the 2006 Bonds themselves, which issued on December 22, 2006.[2] Additionally, on or about

---

[1] Unless otherwise noted, the court finds the following facts to be undisputed for the purposes of summary judgment based on the parties' proposed findings, responses and replies, supporting evidence and the record as a whole.

[2] This transaction in many ways mirrors the transaction in another recent case before this court, *Stifel, Nicolaus & Company, Inc. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, No. 13-cv-372-wmc (W.D. Wis. May 16, 2014), but differs in at least one important respect: in that case, the Trust Indenture had been held void under the Indian Gaming Regulatory Act as unapproved

December 16, 2006, the Band and Stifel executed a Bond Purchase Agreement with Stifel, pursuant to which Stifel agreed to purchase bonds totaling in excess of $31,000,000 issued by the Band.

The version of the Bond Purchase Agreement actually executed was number six in a series of drafts, signified by its document identifier number, MILW_2121571.**6**, the last digit bolded by the court for emphasis indicating the version number. For clarity, the court refers to this version of the Bond Purchase Agreement as "BPA Version 6."

BPA Version 6 provides on the first page:

> This BOND PURCHASE Agreement (the "Agreement") is made and entered into as of December 15, 2006, between LAC COURTE OREILLES BAND OF LAKE SUPERIOR CHIPPEWA INDIANS OF WISCONSIN (the "Tribe") and STIFEL, NICOLAUS & COMPANY, INCORPORATED, a Missouri corporation (the "Initial Purchaser").

(Compl. Ex. A (dkt. #1-1) 1.) Section 14(b) of BPA Version 6 goes on to provide that:

> The Tribe expressly submits to and consents to the jurisdiction of the United States District Court for the Western District of Wisconsin (including all federal courts to which decisions of the United States District Court for the Western District of Wisconsin may be appealed), and the Lac Courte Oreilles Tribal Court, and in the event that the United States District Court for the Western District of Wisconsin lacks jurisdiction, then the courts of the State of Wisconsin wherein jurisdiction and venue are otherwise proper, with respect to any dispute or controversy arising out of this Agreement and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith.

(*Id.* at 23.)

---

management contract. *See* 25 U.S.C. §§ 2710(d)(9), 2711(a)(1); 25 C.F.R. § 533.7. No party has made such an argument here. This is apparently for good reason, as the documents in this case do not include any indicia of management with respect to the Band's casino. *See Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 698 (7th Cir. 2011) (listing provisions that together rendered the Trust Indenture void as an unapproved management contract).

## II. Pre-Execution Negotiations

On June 28, 2006, one or more representatives of Stifel, Nicolaus & Company, Inc. entered the Lac Courte Oreilles Reservation to discuss financing options available to the Band in connection with the sale of two series of bonds.   On October 18, 2006, Stifel representatives David Noack and Michael Schinzer again traveled to the Band's reservation, toured the facilities and discussed the Band's operations and future financing plans.   During those visits, Noack apparently did not disclose to the Band that it could raise desired funds simply by issuing new bonds, rather than refunding and purchasing the 2003 Bonds, nor did he disclose that the interest, commissions and other costs associated with the 2003 Bonds would increase were the Band to issue new bonds and use the proceeds to refund and purchase the 2003 Bonds.[3]

Ultimately, the Band decided to issue the 2006 Bonds.   Godfrey & Kahn attorneys Brian Pierson and Tom Griggs represented the Band in negotiating the terms of various documents that memorialized the transaction.   In addition, an in-house attorney for the Band, Paul Shagen, worked on the transaction.   Stifel was represented by Reed Groethe, an attorney at Foley & Lardner.

### A.  The Trust Indenture

On October 30, 2006, Griggs sent an e-mail to Groethe, Pierson, Shagen and Norma Ross, who was the Executive Director of the Tribe.   In that e-mail, he attached the first draft

---

[3] Stifel purports to dispute these facts, but offers no contrary evidence, arguing instead that they are relevant only to the claims pending in the Tribal Court.  While this court finds that the nature of these claims *are* relevant for the purpose of analyzing jurisdiction under *Montana* and undisputed for summary judgment purposes here, the court agrees that its findings should not be binding as to the merits of the Band's claims in Tribal Court, where both the facts and the motivations to invest time and expense in disputing those facts are very different.

of the Trust Indenture.  Section 13.02 of that draft contained a waiver of tribal sovereign immunity and a forum selection clause in which the Band "expressly submit[ted] to and consent[ed] to" the jurisdiction of Wisconsin federal courts and, if they lacked jurisdiction, Wisconsin state courts, "with respect to any dispute or controversy arising out of this Indenture, the Bonds or the Bond Resolution and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith."  No reference to the Lac Courte Oreilles Tribal Court appeared in the first draft of Section 13.02.

Two days later, on November 1, Groethe e-mailed Griggs attaching revisions on behalf of Stifel.  Among those changes was the addition of language at the end of Section 13.02 reading "to the exclusion of the jurisdiction of any court of the Tribe."  Groethe proposed the same addition to the forum selection clauses in the forms of the 2006A and 2006B Bonds, which were exhibits to the Trust Indenture.  On November 13, Griggs circulated a new draft, which incorporated Groethe's proposed language excluding Tribal Court jurisdiction.  The final version of the Trust Indenture that the parties eventually executed likewise contained that same exclusionary language.

### B.  The Bond Purchase Agreement

On December 10, 2006, Groethe sent Griggs an e-mail attaching a draft of the Bond Purchase Agreement between Stifel and the Band.  Section 14(b) of the draft contained a forum selection clause similar but not identical to the clause in the Indenture.  Specifically, the Band consented to the jurisdiction of the United States District Court for the Western District of Wisconsin *and* the Lac Courte Oreilles Tribal Court for "any dispute or controversy arising out of this Agreement and including any amendment or supplement

which may be made thereto, or to any transaction in connection therewith." Five days later, Pierson e-mailed Groethe, stating that Shagen had called, thinking that he needed the final Bond Purchase Agreement for a meeting that day.  About thirty minutes later, Groethe e-mailed Griggs, Pierson, Shagen and Ross, attaching a revised draft of the Bond Purchase Agreement.  Groethe stated in his e-mail that additional changes would be made later in the day to reflect the final structure of the bond issue.  The draft attached was BPA Version 6, which contained the forum selection clause in which the Band consented to Tribal Court jurisdiction.

About two hours later, Pierson e-mailed Groethe.  The e-mail read:

> We just got off the phone with [the Band's in-house counsel] Paul Shagen.  He wants us to be uniform on all documents with jurisdiction in federal court, state court fall back and get rid of references to tribal court.
>
> On reflection, I agree.  From the Tribe's point of view, it doesn't add anything but gives the bondholder a potential extra remedy. But from the bondholder's point of view, that extra remedy is at the price of giving the tribe the right to preempt any state court action with a tribal court declaratory judgment action.
>
> I think we can assume that the Tribe, having submitted to federal/state court jurisdiction, will comply with any orders or judgments issued by those courts.
>
> Sorry for the inconvenience.  Can you make the changes?

(*See* Groethe Decl. Ex. E (dkt. #41-5).)

In response, Groethe circulated an updated draft with the document identifier number MILW_2121571.7 ("BPA Version 7"), which struck the phrase "Lac Courte Oreilles Tribal Court" from the forum selection clause.  No evidence in the record suggests that the Band objected to the changes.  BPA Version 7 also included the final principal

amounts of the 2006 Bonds and the mandatory sinking fund redemption amounts for the Bonds, which had not been included in prior versions of the agreement.

Two hours later, at 4:09 P.M., Groethe e-mailed Griggs, Pierson, Shagen, Ross and Stifel representatives attaching yet another version of the Bond Purchase Agreement ("BPA Version 8"). Like the forum selection clause in BPA Version 7, the forum selection clause in BPA Version 8 also omitted reference to the Lac Courte Oreilles Tribal Court.[4] Again, no evidence in the record suggests that the Band objected to this omission. Unlike the Indenture, however, no version of the BPA expressly *excludes* the Tribal Court's exercise of jurisdiction. BPA Version 8 was the last version of the Bond Purchase Agreement circulated.

## III. Closing

Presumably, sometime before the end of 2006, the actual closing on the 2006 bond transaction took place at the offices of Godfrey & Kahn in Milwaukee.[5] Attorney Groethe was out of town and did not attend. While representatives from both Stifel and the Band

---

[4] In full, the forum selection clause in BPA Version 8 reads:

> The Tribe expressly submits to and consents to the jurisdiction of the United States District Court for the Western District of Wisconsin (including all federal courts to which decisions of the United States District Court for the Western District of Wisconsin may be appealed), and in the event that the United States District Court for the Western District of Wisconsin lacks jurisdiction, then the courts of the State of Wisconsin wherein jurisdiction and venue are otherwise proper, with respect to any dispute or controversy arising out of this Agreement and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith.

Thus, even this version does not include the language in the Indenture specifically excluding Tribal Court jurisdiction.

[5] The parties' proposed findings do not give an exact date of closing, nor does it appear particularly relevant.

executed BPA Version 6, there is no dispute that Pierson as counsel for the Band expected BPA Version 8 to be executed by the parties.

In addition to including the Band's consent to the jurisdiction of the Lac Courte Oreilles Tribal Court, BPA Version 6 does not accurately reflect the 2006 Bonds' final principal amounts as listed in the Indenture:

| Bonds | BPA Version 6 | Indenture | BPA Version 8 |
|---|---|---|---|
| 2006A Bonds | $13,115,000 | $13,150,000 | $13,150,000 |
| 2006B Bonds | $18,210,000 | $18,285,000 | $18,285,000 |

On January 10, 2007, Godfrey & Kahn sent Noack and Groethe, among others, a transcript of the 2006 bond transaction, including all of the key documents. No representative from Stifel ever contacted Pierson to advise that the wrong version of the Bond Purchase Agreement had been signed and included in the closing transcript. On multiple occasions thereafter, Stifel declared and swore under penalty of perjury that the BPA Version 6 was a "true and correct copy" of the Bond Purchase Agreement between Stifel and the Band.

## IV. Other Documents

As mentioned above, the parties executed a variety of other documents in connection with the bond transaction. Those documents contain their own forum selection clauses, although the language varies among documents, just as it does in the Indenture and BPA.

## A.  Confidentiality Agreement

Stifel and the Band also entered into a Confidentiality Agreement.  Pursuant to that agreement, Stifel acknowledged performing work as a "Consultant" for the Band in connection with the "General Obligation Tribal Purpose and Refunding Bonds, Series 2006A and General Obligation Taxable Economic Development and Refunding Bonds, Series 2006B (the 'Engagement')."  Section 10(e) of that agreement provides:

> Consultant shall bring all actions, claims or suits arising in connection with this Agreement solely in the LCO Tribal Court. Tenant (*sic*) consents to the personal jurisdiction of the LCO Tribal Court for any action, claim or suit arising in connection with this Agreement.

## B.  Trust Indenture

The Trust Indenture between the Band and Wells Fargo establishes the means by which the Band is to repay the principal and interest on the 2006A and 2006B Bonds.  Its forum selection clause provides that the Band expressly submits to and consents to the jurisdiction of the United States District Court for the Western District of Wisconsin and, if that court fails to exercise jurisdiction, the courts of the State of Wisconsin "for the adjudication of any dispute or controversy arising out of this Indenture, the Bonds or the Bond Resolution and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith, to the exclusion of the jurisdiction of any court of the Tribe."  That clause does not mention the "Bond Purchase Agreement."

In Section 1.01, the Trust Indenture defines some of the terms that appear within that forum selection clause.  "Bonds" is defined as "the Series 2006 Bonds and any Additional Bonds issued under a supplement to this Indenture."  "Bond Purchase Agreement" means "the Bond Purchase Agreement dated December 15, 2006, between the

9

Tribe and [] [Stifel]."  "Bond Resolution" means "the resolution of the Tribe adopted by Tribal Governing Board on December 15, 2006, authorizing the Series 2006 Bonds, as the same may be amended, modified or supplemented by any amendments or modifications thereof."  "Indenture" is defined as "this Trust Indenture between the Tribe and Trustee, dated as of December 1, 2006, under which the Bonds are authorized to be issued, and including any amendments or supplements thereto."

Section 14.03 states that nothing in the Trust Indenture:

> is intended or shall be construed to confer upon or to give to any person or corporation, other than the parties hereto and the Holders of the Bonds issued hereunder, any right, remedy or claim under or by reason of this Indenture or covenant, condition or stipulation thereof; and the covenants, stipulations and agreements in this Indenture contained are and shall be for sole and exclusive benefit of the parties hereto, their successors and assigns, and the Holders of the Bonds.

"Holder" is defined within the Indenture as "the person in whose name such Bond shall be registered."

The Trust Indenture also includes a "Situs of Transaction" clause, which discusses the Band's willingness to submit to the jurisdiction "of both the federal courts and the courts of the State of Wisconsin."  In that clause, the Band affirmed that the transaction represented by the Indenture did not take place on Indian lands and represented that the negotiations regarding the Indenture "occurred on lands within the jurisdiction of the courts of the State of Wisconsin, and the execution and delivery of this Indenture have not occurred on Indian Lands, but rather on lands within the jurisdiction of the courts of the State of Wisconsin."

### C.  Offering Memoranda

The Preliminary Limited Offering Memorandum and the Limited Offering Memorandum both state that they are "brief outlines of some of the provisions" of the Bonds and the Indenture.  They go on to state that neither the Memoranda themselves nor any statements made orally or in writing are to be "construed as a contract with the owners of the Bonds."

Like the other documents, the Memoranda contain statements of the Band's consent to the jurisdiction of Wisconsin federal and state courts.  Specifically, the Memoranda provide that the Band consents to Wisconsin courts' jurisdiction "for the adjudication of any dispute arising under the Bond Documents or the Bond Purchase Agreement, to the exclusion of the jurisdiction of any court of the Tribe."

### D.  Resolution No. 06-110

Resolution No. 06-110 was passed on December 15, 2006, by the Band's Tribal Governing Board.  The Resolution states that it "shall constitute a contract with the Trustee."  Resolution 06-110 contains a forum selection clause in which the Band consented to the jurisdiction of Wisconsin federal and state courts "with respect to any dispute or controversy arising out of the Indenture, the Bonds, this Bond Resolution and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith."  The Resolution neither authorizes nor precludes litigation in the Lac Courte Oreilles Tribal Court in connection with the bond transaction, nor does it mention the Bond Purchase Agreement in the forum selection clause.

### E.  Bonds

On December 22, 2006, the Band executed the 2006A Bonds.  The 2006A Bonds contain forum selection language in which the Band submits and consents to the jurisdiction of Wisconsin federal and state courts "for the adjudication of any dispute or controversy arising out of this Bond, the Indenture, or the Bond Resolution and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith, to the exclusion of the jurisdiction of any court of the Tribe."  These bonds contain no express reference to the "Bond Purchase Agreement" in the forum selection clause.

In the 2006B Bonds, the Band likewise represented it "submits to and consents to" the jurisdiction of Wisconsin federal and state courts for the adjudication of any dispute or controversy arising out of "this Bond, the Indenture, or the Bond Resolution and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith."  However, the 2006B Bonds do *not* contain language excluding the jurisdiction of the Lac Courte Oreilles Tribal Court.  Like the 2006A Bonds, the 2006B Bonds also contain no express reference to the "Bond Purchase Agreement" in the forum selection clause.

## V. The Tribal Court Action

On December 13, 2012, the Tribe brought suit against Stifel in the Lac Courte Oreilles Tribal Court (the "Tribal Court Action"), alleging that Stifel undertook to advise the Band regarding its financing options in 2006, but failed to disclose certain information before the Tribe entered into the Bond Purchase Agreement.  The Band alleged three specific causes of action: (1) fraudulent concealment or non-disclosure; (2) breach of

fiduciary duty; and (3) unjust enrichment.  It sought rescission of the Bond Purchase Agreement or, in the alternative, a judgment for money damages.

Stifel commenced the present lawsuit on February 19, 2013, seeking a declaratory judgment that the Tribal Court lacks jurisdiction over it.  On May 29, 2013, Tribal Court Judge James B. Mohr entered an order staying the Tribal Court Action, pending the conclusion of this suit and exhaustion of all appellate rights related to it.  In August of 2013, the parties stipulated to Stifel filing an amended complaint, through which it added a claim to reform the Bond Purchase Agreement on the grounds of mutual mistake.  (Dkt. #34.)

## OPINION

This court has subject matter jurisdiction under 28 U.S.C. § 1331 over the question of whether the Tribal Court's exercise of jurisdiction over Stifel exceeds the limitations imposed on tribal court jurisdiction by federal law.  (See Compl. (dkt. #1) ¶¶ 28; 39.)  It is less clear that this court's original jurisdiction extends to the question of whether the various forum selection clauses divests the Tribal Court of jurisdiction or at least precludes the Band from proceeding against Stifel in that court.  *See Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, No. 13-cv-372-wmc, 33-37 (W.D. Wis. May 16, 2014).  In any event, the issues are sufficiently intertwined that the court will exercise supplemental jurisdiction over that claim, as well as over Stifel's claim for contractual reformation pursuant to 28 U.S.C. § 1367, in the interest of efficiency, consistency and fairness to all parties.

## I. Reformation

The executed version of the Bond Purchase Agreement, BPA Version 6, explicitly makes venue in the Lac Courte Oreilles Tribal Court proper.  (*See* Compl. Ex. A (dkt. #1-1) 23 ("The Tribe expressly submits to and consents to the jurisdiction of . . . the Lac Courte Oreilles Tribal Court[.]")  Stifel asks the court to reform that contract to reflect the parties' actual intentions, as manifested in BPA Version 8, the last circulated version of the Bond Purchase Agreement.

The general rule in Wisconsin is that a contract may be reformed when "the 'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'"  *Vandenberg v. Continental Ins. Co.*, 2001 WI 85, ¶ 50, 244 Wis. 2d 802, 628 N.W.2d 876.   In such circumstances, courts may reform the contract so as to express the parties' actual intentions or agreement.  *Am. Cas. Co. of Reading, Pa. v. Memorial Hosp. Ass'n*, 223 F. Supp. 539, 542 (E.D. Wis. 1963); *Newmister v. Carmichael*, 29 Wis. 2d 573, 576-77, 139 N.W.2d 572 (1966).   In an action for reformation on the grounds of mutual mistake, it must "be established by clear, convincing evidence that both parties intended to make a different instrument than the one signed and both agreed on facts different than those set forth in the instrument."  *Newmister*, 29 Wis. 2d at 577.   "Parol evidence is admissible to establish mutual mistake in a reformation action."  *Id.*

Here, the parties to the Bond Purchase Agreement all acknowledge a failure to execute the most recent version of the document, which all the evidence indicates was their collective intent.   One particular uncontroverted piece of evidence supporting this conclusion is the fact that BPA Version 6 incorrectly relays the principal amounts of the

14

2006A and 2006B Bonds.  In contrast, BPA Version 8 contains the correct figures while also omitting any reference to the Lac Courte Oreilles Tribal Court, consistent with the parties' negotiations.

Indeed, following circulation of BPA Version 6, one of the Band's own attorneys requested that its language be altered to remove all references to the Lac Courte Oreilles Tribal Court, because from the Band's point of view then, that language simply gave the bondholders an additional remedy.  Nothing in the record suggests that either Stifel or the Band ever changed its view that all references to the Lac Courte Oreilles Tribal Court should be removed from the Bond Purchase Agreement.  Based on this record, the court finds clear and convincing evidence that the parties did not intend to include consent to the jurisdiction of the Lac Courte Oreilles Tribal Court in that agreement.  The court also finds no credible evidence or argument of a contrary interest by any party.

The Band nevertheless argues that Stifel has not met its burden of proof, pointing out that the best evidence of parties' intent is what is actually contained in the written contract.  As a general proposition, of course, this is absolutely true.  *See KBS Constr., Inc. v. McCullough Plumbing, Inc.*, 2010 WI App 19, ¶ 25, 323 Wis. 2d 276, 779 N.W.2d 723 (unpublished) (citing *Seitzinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426).  But if the language of a written contract were itself dispositive, all claims for contractual reformation based on mistake would be precluded, since the entire premise of such claims is that the written instrument does *not* correctly express the parties' intent.  *See Vandenberg*, 2001 WI 85, ¶ 50.

The Band also faults Stifel for failing to present evidence of what occurred between the circulation of BPA Version 8 and the closing, presumably suggesting that something *may*

15

have occurred to change the parties' minds on the Lac Courte Oreilles Tribal Court as a venue. Stifel's claim, however, is that *nothing* occurred to change the parties' minds on that point and that they intended to execute BPA Version 8. Given the clear and convincing evidence that this is true, Stifel cannot be faulted on summary judgment for failing to prove a negative. If additional negotiations took place or one of the parties shifted positions, the Band should have come forward with some evidence of those changes.

Finally, the Band argues that Stifel failed to exercise reasonable diligence in seeking reformation and should be estopped from maintaining such a claim now. *See Emmco Ins. Co. v. Palatine Ins. Co.*, 263 Wis. 558, 569, 58 N.W.2d 525 (1953) (articulating the "general rule" that "one seeking to reform an instrument for mutual mistake must have exercised reasonable diligence"). Its argument is premised primarily on the fact that the Bond Purchase Agreement was executed in late 2006 and Stifel only filed suit for reformation in 2013, nearly seven years later. But estoppel is not so formulaic a doctrine. As Stifel correctly points out, there was no reason it should have become aware of the parties' mutual mistake following the closing until the Band filed the Tribal Court Action in late 2012, as that was the first time a dispute with respect to the Bond Purchase Agreement arose. The delay between 2006 and 2012, therefore, is excusable. *Cf. Stadele v. Resnick*, 274 Wis. 346, 353, 80 N.W.2d 272 (1957) ("The continued recognition of rights based upon the omitted terms acknowledged by the interested parties is generally sufficient to account for a delay in instituting suit to enforce the reformation. 'Delay will thus be excused . . . by defendant's silence or other conduct indicating acquiescence in plaintiff's right.'") (citation omitted; internal quotation marks and alteration in original).

16

Stifel also points out that it first discovered the mistake in July of 2013, when the parties' attorneys met to discuss the Band's written discovery requests in this lawsuit.[6]  After Stifel informed the Band of its discovery, the parties stipulated that Stifel could file an amended complaint in August of 2013 seeking reformation based on mutual mistake.  (*See* dkt. #34.)  Nothing about these facts suggests that Stifel failed to exercise reasonable diligence in seeking reformation, nor has the Band indicated how it is even prejudiced by Stifel's claim for reformation.  On the contrary, the Band contends that reformation of the Bond Purchase Agreement to omit reference to the Lac Courte Oreilles Tribal Court is essentially irrelevant to whether that court has jurisdiction over the dispute.  (*See* Def.'s Resp. (dkt. #44) 12.)

Accordingly, the court concludes that Stifel has met its burden to show by clear and convincing evidence that BPA Version 6 does not reflect the parties' actual intent with respect to the forum selection clause; that BPA Version 8 does; and that Stifel is entitled to summary judgment on this issue.[7]

## II. Tribal Court Jurisdiction

"[A]bsent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances."  *Strate v. A-1 Contractors*, 520 U.S. 438, 445 (1997).  This doctrine was first articulated in *Montana v. United States*, 450 U.S. 544 (1981), the landmark case in which the Supreme Court held that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers

---

[6] Apparently, the Tribal Court Action was stayed before any discovery could take place in that case.

[7] The Band also reasonably suggests that this motion should be denied as moot, but the court disagrees, at least to the extent that the lack of reference to the Lac Courte Oreilles Tribal Court has *some* bearing on the other contractual issues discussed below.

of the tribe." *Id.* at 565.  The first exception to *Montana*'s general bar is that "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.*  The second exception is that a "tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566. Subsequently, the Supreme Court held in *Strate* that the rule of *Montana* limits tribal adjudicatory authority, as well as regulatory authority.  *Strate*, 520 U.S. at 453.  Stifel contends that neither *Montana* exception authorizes the Tribal Court's exercise of jurisdiction over it in the action filed by the Band.

### A.  First Exception

With respect to the first exception, Stifel argues that the "consensual relationship" exception requires a factual nexus between the Tribal Court Action and the relationship between the parties.  In contrast, Stifel contends that the Tribal Court Action in this case seeks to dismantle, rather than regulate, the consensual relationship between the parties, meaning that the required factual nexus is not present.

*Montana*'s first exception certainly requires a nexus between the tribe's attempt at regulation and the consensual relationship between the tribe and the non-tribal party.  *See Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 656 (2001).  The distinction Stifel would draw between *regulation* of a relationship and *dismantling* of a relationship, however, finds no support in the case law it cites.  On the contrary, the nexus inquiry appears to be far broader

18

than that, asking simply whether the tribal action is related to the nonmember's consensual relationship with the tribe.  In *Atkinson Trading*, for example, the Navajo Nation enacted a hotel occupancy tax upon all hotel rooms located within the boundaries of the Navajo Nation Reservation.  *Id.* at 648.  Atkinson Trading Company owned a hotel with the reservation boundaries but on non-Indian land that derived much of its business from nonmember tourists.  Atkinson challenged the imposition of that tax under *Montana*'s general restrictions on tribal authority over nonmembers, contending that neither *Montana* exception applied.  *Id.*

The Supreme Court held that *Montana*'s first exception did not justify the tax.  The tribal parties pointed to two separate relationships they contended gave the Nation regulatory authority over Atkinson.  First, they argued that Atkinson had entered into a consensual relationship with the Nation by benefiting from numerous services provided by the Nation, such as tribal police, fire and medical services.  The Court rejected that argument, explaining that *Montana* requires the "consensual relationship . . . stem from 'commercial dealing, contracts, leases, or other arrangements.'"  *Id.* at 655.  As the court explained, a finding that the mere receipt of tribal services was enough to establish the requisite connection would cause the first *Montana* exception to "swallow the rule."  *Id.* Second, the tribal parties argued that Atkinson had consented to the tax by becoming an "Indian trader" under 25 U.S.C. § 261.  The Court also rejected that argument, holding that "the tax or regulation imposed by the Indian tribe [must] have a nexus to the consensual relationship itself."  *Id.* at 656.  Thus, Atkinson's "Indian trader" status could not support the imposition of a hotel occupancy tax, although the Court left open the question of

whether the Navajo Nation could impose a tax on activities arising out of the "Indian trader" relationship.  *Id.*

In *Strate*, the other case that Stifel cites, a traffic accident occurred on a portion of highway that ran through the Fort Berthold Indian Reservation.  Neither party to the accident was a member of the Three Affiliated Tribes, but one driver's employer, A-1 Contractors, was at that time under a subcontract with a corporation wholly owned by those tribes and performed all work under that subcontract within the boundaries of the reservation.  The other driver, Fredericks, sued A-1 Contractors and its employee, Stockert, in tribal court.  After contesting jurisdiction in the tribal court, A-1 Contractors and Stockert counter-sued in federal court, seeking a declaratory judgment that the tribal court lacked jurisdiction.

The Supreme Court held that *Montana*'s first exception did not authorize the tribal court to exercise jurisdiction over A-1 Contractors and Stockert.  While A-1 Contractors had a consensual relationship with the Tribes by means of the subcontract, Fredericks' claims against Stockert were unrelated to that subcontract.  Furthermore, Fredericks was not a party to the subcontract at all, and the Tribes were "strangers to the accident."  *See Strate*, 520 U.S. at 457.  In contrast to the cases fitting within *Montana*'s first exception, which generally authorized regulation of nonmembers' on-reservation business activities and transactions, the Court found that "the Fredericks-Stockert highway accident present[ed] no 'consensual relationship of the qualifying kind.'"  *Id.*

In contrast, it is undisputed here that Stifel entered into a consensual commercial transaction with the Band, as memorialized in the Bond Purchase Agreement, following on-reservation negotiations and discussion of financing options.  Moreover, the Band now seeks

to hold Stifel accountable for its on-reservation actions (or failures to act) in connection with that same relationship -- that is, its alleged fraudulent omissions and the resultant breach of its fiduciary duty. *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 332 (2008) (discussing first *Montana* exception and noting that "*Montana* and its progeny permit tribal regulation of nonmember *conduct* inside the reservation that implicates the tribe's sovereign interests") (emphasis in original). Stifel entirely fails to identify a factual disconnect between the Band's claims in Tribal Court and the commercial relationship between the parties.

In fact, this case bears more similarity to *Williams v. Lee*, 358 U.S. 217 (1959), cited in *Montana* itself in *support* of the first exception, than it does to either *Atkinson* or *Strate*. *See Montana,* 450 U.S. at 564. In *Williams*, a nonmember who operated an on-reservation general store brought an action in state court against a Navajo Indian to collect for goods sold to them on credit. The Supreme Court held:

> There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. It is immaterial that respondent is not an Indian. He was on the Reservation and the transaction with an Indian took place there.

*Williams*, 358 U.S. at 223 (internal citation omitted); *see also Strate*, 520 U.S. at 457 (describing the facts in *Williams*). While no one has suggested in this proceeding that tribal court jurisdiction over the Band's claims is *exclusive* (indeed, the Band would have a difficult time with such a claim, given the forum selection clauses authorizing venue in Wisconsin federal and state courts), *Williams* further supports the proposition that the first *Montana*

exception authorizes jurisdiction over Stifel, at least with respect to the specific claims currently pending before the tribal court.

Even if the nexus is otherwise sufficient between Stifel's consensual relationship with the tribe and the tribal court action seeking to regulate it, Stifel argues that the Band cannot overcome its representations in the Indenture and Bond Purchase Agreement that the bond transaction did *not* take place on Indian lands. The court disagrees. Whatever the import of these contractual representations, they are not sufficient to overcome the undisputed fact that Stifel representatives actually did enter the reservation to discuss financing options, at which time they allegedly failed in a common law duty to disclose better options for the Band. While the Band's express *exclusion* of its courts may be sufficient to foreclose the Tribal Court's exercise of jurisdiction, even over the Band's designated "Consultant," an indirect, vague statement as to where the bond "transaction" itself took place is not enough to overcome the direct nexus between Stifel's alleged misrepresentations on tribal land and a tribal court action challenging those misrepresentations.

### B. Second Exception

The second *Montana* exception states that a "tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. 566. The plain terms of this exception are deceptively broad, since "virtually every act that occurs on the reservation could be argued to have some political, economic, health or welfare ramification to the tribe." *County of Lewis v.* Allen, 163 F.3d 509, 515 (9th Cir. 1998) (en banc). The

22

Supreme Court has rejected such an expansive interpretation, however, holding that "if *Montana's* second exception requires no more, the exception would severely shrink the rule." *Strate*, 520 U.S. at 458.

Rather, for the second *Montana* exception to apply, the harm at issue must "do more than injure the tribe, it must 'imperil the subsistence' of the tribal community." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 341 (2008). "[T]h[e] elevated threshold for application of the second *Montana* exception suggests that tribal power must be necessary to avert catastrophic consequences." *Id.* (quoting F. Cohen, Handbook of Federal Indian Law § 4.02[3][c], at 232 n.220). In general, where a case does not affect a tribe's ability "to preserve 'the right of reservation Indians to make their own laws and be ruled by them,'" *Strate*, 520 U.S. at 459 (quoting *Williams*, 358 U.S. at 220), the second *Montana* exception does not apply.

Given this narrow application, the second *Montana* exception does not provide for tribal court jurisdiction in this instance -- at least on the facts in this record. While the Band argues that Stifel's allegedly fraudulent conduct has caused it significant financial harm, there is no evidence that the increased interest, commissions and charges at issue have imperiled the subsistence of the tribal community or will affect the Band's ability to make and enforce its own laws.

## C. Forum Selection Clause

While the Lac Courte Oreilles Tribal Court may exercise jurisdiction over Stifel under the first *Montana* exception on the claims currently before it, this does not end the inquiry. Stifel argues that even if *Montana* authorizes jurisdiction, the Band is limited to

litigating the dispute in the forum for which it contracted.[8]   "[A] forum-selection clause is entitled to a favorable presumption, [but] the law also holds that where jurisdiction normally would exist, 'it cannot be ousted or waived absent a clear indication of such a purpose.'"  *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶ 23, 296 Wis. 2d 273, 722 N.W.2d 633 (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)).   Thus, to prevail on its argument, Stifel must demonstrate that the parties clearly intended to waive the jurisdiction of the Lac Oreilles Tribal Court for the purposes of the pending Tribal Court action.

As this court has previously recognized, "where venue is specified with mandatory or obligatory language, [a forum selection] clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."  *Stifel, Nicolaus & Co., Inc. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, -- F. Supp. 2d --, 2013 WL 5803778, at *7 (W.D. Wis. Oct. 29, 2013) (quoting *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006)).   "Mandatory" forum selection clauses are those in which a particular forum is designated as *exclusive* -- for example, those stating that venue "shall" lie in a particular court for "any dispute."  *See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992) (collecting cases).   "Permissive" forum selection clauses are

---

[8] The Band appears to concede that entering into a narrowly-tailored forum selection clause like the one in the Bond Purchase Agreement may serve to divest its court of jurisdiction.   The court expresses no opinion on that question.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("No one seriously contends in this case that the forum selection clause 'ousted' the District Court of jurisdiction …. The threshold question is whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties … by specifically enforcing the forum clause.").   In light of the fact that jurisdiction is proper under *Montana*, the court only holds that the Band is not otherwise precluded from proceeding with its pending claims in Tribal Court.

those in which parties consent to the jurisdiction of a court but do not foreclose litigation in other courts.  *See id.*; *Converting/Biophile Labs.*, 2006 WI App 187, ¶¶ 25-32.

Applying these general principals here yields inconsistent results because of the differing language in the various bond documents.  The Bond Purchase Agreement, the 2006B Bonds and the Resolution include permissive forum selection clauses, in which the Band has consented to jurisdiction in Wisconsin federal and state courts, without any indication that this jurisdiction is *exclusive*.  In such cases, "where only jurisdiction is specified, the clause will generally not be enforced[.]"  *Muzumdar*, 438 F.3d at 762.[9]  In contrast, the Trust Indenture, the Offering Memoranda and the 2006A Bonds not only consent to Wisconsin federal and state court jurisdiction, but also expressly exclude the jurisdiction of the Lac Courte Oreilles Tribal Court, making jurisdiction in federal and state court exclusive "as a practical matter."  *See Stifel*, 2013 WL 5803778, at *8 n.8.[10]

---

[9] When a contract is deemed unambiguous under Wisconsin law, a court's construction of that contract generally begins and ends with the "four corners of the contract, without consideration of extrinsic evidence."  *Town Bank v. City Real Estate Dev. LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476.  Presuming the Bond Purchase Agreement to be unambiguous, the court's analysis would end here, with the determination that its forum selection clause is merely permissive and does not foreclosure Tribal Court jurisdiction.  An argument can be made, however, that the Bond Purchase Agreement was not intended to stand on its own in reflecting the parties' intent, given that all the documents were executed close in time and refer to one another throughout.  *See id.* at ¶ 38 (court may consider extrinsic evidence in determining whether parties intended contract to represent the final and complete expression of their argument).  Here, Stifel implicitly, if not overtly, is asserting that consideration of these other documents injects ambiguity into the parties' choice of forum over the pending Tribal Court Action, and so this court proceeds to consider them as though the Bond Purchase Agreement is ambiguous on this question.  For the reasons discussed in the remainder of this opinion, Stifel cannot prevail under this assumption either.

[10] Stifel appears to misinterpret this court's previous decision, arguing that the language applying the forum selection clauses to "any dispute" makes jurisdiction in Wisconsin federal and state courts the only option.  That is incorrect.  In that case, the clauses at issue did *not* contain express language making jurisdiction in Wisconsin federal court exclusive.  However, because the parties were all Wisconsin-based and their transactions took place in Wisconsin, they had only three options: Wisconsin federal court, Wisconsin state court, and tribal court.  By consenting to two, and foreclosing the other, the parties had manifested an "intent to make venue exclusive."  *Muzumdar*, 438 F.3d at 762.  The same is true here, but only with respect to those documents including the

Stifel appears to recognize that it must rely on the Trust Indenture and the 2006A Bonds to prevail on its claim.[11]  This is a weak starting point, particularly because the Tribal Court Action seeks *at most* to rescind only a single document: the Bond Purchase Agreement.  Other than the Confidentiality Agreement, which makes the Tribal Court the *exclusive* venue for resolving disputes arising out of that agreement, the Bond Purchase Agreement is also the only document to which Stifel is actually a party.  And as discussed above, the Bond Purchase Agreement does not foreclose the jurisdiction of the Lac Courte Oreilles Tribal Court, even in its reformed state.  (*See* Stipulation Ex. B (dkt. #34) 23 (BPA Version 8 jurisdiction clause).)

In response to its status as a non-party to the agreements containing more favorable forum selection clauses, Stifel argues that courts have permitted non-signatories to invoke forum selection clauses so long as the party being bound was a signatory, citing *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004).  In that case, the Seventh Circuit considered the enforceability of a forum selection clause in a "Shareholder Agreement" by non-parties.  The plaintiff, American Patriot, had entered into the Shareholder Agreement with a company called Mutual Holdings.  That agreement was the principal contract establishing a program through which various Mutual affiliates issued policies to American Patriot's customers, with American Patriot acting as agent.  *Id.*

---

language excluding the Lac Courte Oreilles Tribal Court as a venue.  Without that additional language, the forum selection clauses are merely permissive.  *See Converting/Biophile Labs.*, 2006 WI App 187, ¶¶ 25, 32.

[11] Stifel also looks to the Offering Memoranda, but as the Band points out, neither memorandum is a contract.  Stifel offers no authority for the proposition that the Band may waive its court's jurisdiction merely by expressing intent, rather than through a contract, and the court has found none.  Indeed, the presumptive validity of forum selection clauses in Wisconsin comes from the common law concept that parties to a contract are obligated to perform their duties under that contract.  *Converting/Biophile Labs.*, 2006 WI App 187, ¶ 22.

at 886.  In the Shareholder Agreement, the parties contracted for exclusive jurisdiction in Bermuda for "any dispute concerning this Agreement."  *Id*.  The plaintiff also executed various other contracts with Mutual affiliates in connection with that insurance program, although those contracts did not include forum selection clauses.

After the insurance program went into effect, plaintiff began to suffer large losses.  Eventually, it sued for breach of contract and fraud in the inducement, naming the Mutual affiliates as defendants, but excluding Mutual Holdings itself.  The defendants moved to dismiss for improper venue, and the district court granted the motion on the basis of the forum selection clause.  364 F.3d at 886.

On appeal, the plaintiff argued, among other things, that none of the Mutual defendants was a party to the Shareholder Agreement (though they were parties to other related contracts without forum selection clauses) and that defendants, therefore, lacked the right to enforce the forum selection clause therein.  The Seventh Circuit rejected that argument, holding that it would

> amount to saying that a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit.  If this were true, such clauses would be empty.  It is not true.

364 F.3d at 888.  The court went on to say that a forum selection clause cannot be defeated "by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates."  *Id.* at 889; *see also Organ v. Byron*, 434 F. Supp. 2d 539, 541-42 (N.D. Ill. 2005) (plaintiff could not avoid forum selection clause by suing non-signatory officers of signatory corporation).

As outlined above, the material facts here differ from those in *American Patriot* in compelling ways.  As an initial matter, there is no evidence that Stifel is an "affiliate" of *any* of the parties who are signatories to the Trust Indenture or the 2006A Bonds.  The Seventh Circuit recently confirmed that "affiliation," or common ownership, is one of two concepts that may give rise to a non-signatory's right to enforce a forum selection clause.  *See Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439-40 (7th Cir. 2012).  Here, the evidence is to the contrary.  Stifel certainly has no legal affiliation with Wells Fargo, which has the rights to enforce the Indenture, nor with any of the buyers of the 2006A Bonds.[12]  And Stifel does not point to any case in which an *unrelated* party has been permitted to enforce a forum selection clause in a different contract, much less when it is inconsistent with the forum selection clause in the agreements actually signed by that party.  Indeed, *American Patriot* and *Organ* involved affiliates and officers, respectively, of contract signatories.[13]

Furthermore, the Trust Indenture explicitly states that it is *not* intended to confer rights on *any* parties except for the signatories and the Holders of the Bonds, with "Holder" defined as "the person in whose name such Bond shall be registered."  As the Band points out, Stifel has adduced no evidence that it currently holds any of the 2006 Bonds.

---

[12] The record is silent as to who owns the 2006A Bonds now.

[13] The other concept the Seventh Circuit identified as potentially giving a non-signatory to a contract the right to enforce its forum selection clause is that of mutuality -- that is, whether the *other* party would have the right to enforce the forum selection clause against the non-signatory.  *Adams*, 702 F.3d at 442-43.  Stifel does not argue mutuality as a basis for its invocation of the clause, and nothing in the present case suggests that the Band could bind Stifel to a forum selection clause in documents that it did not even sign in any event, particularly where there is *no* indication that Stifel was "simply [a] cat's paw[]" of a signatory or bondholder.  *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995); *see also Adams*, 702 F.3d at 442 (permitting non-signatory to invoke forum selection clause where plaintiff's theory was that non-signatory was co-conspirator and secret principal of signatory).

In fairness, Stifel *was* the original buyer of those bonds and, therefore, has at least an arguable claim to enforcement of the forum selection clause as to the 2006A Bonds.  As previously discussed, however, the Band does not claim any rights under those bonds or the bond transaction as a whole in the pending Tribal Court Action, which only seeks to rescind the Bond Purchase Agreement or, in the alternative, seeks monetary damages to compensate it for the increased interest payments, commissions, and fees associated with its decision to issue the 2006 Bonds and use the proceeds to refund and purchase the 2003 Bonds.  (*See* Compl. Ex. K (dkt. #1-11).)  Said another way, the Band does not seek to dismantle the entire bond transaction, but seeks only those damages arising from Stifel's alleged material omissions with respect to its options to raise capital.  In allowing the Band to proceed on these claims in Tribal Court, this court obviously expresses no opinion on the merit of that underlying lawsuit, noting only that given the limited nature of the claims, it is unclear why an express forum selection clause in the Trust Indenture or 2006A Bonds, should have any bearing on a dispute under the Bond Purchase Agreement alone.

Despite the Trust Indenture's clause indicating that conflicts between the Bond Purchase Agreement and the Trust Indenture are to be resolved in favor of the Indenture, the court also agrees with the Band that there is no such conflict here.  The different forum selection clauses give rights to different parties and deal with controversies arising from different sets of bond documents.  Accordingly, Stifel has offered no principle basis for disregarding one clause in favor of the other when they can coexist without conflict simply by means of the court enforcing them to give effect to their plain language.

This case differs from *American Patriot* in another way as well.  In *American Patriot*, the Shareholder Agreement was deemed part of a "package" of contracts executed with the

Mutual defendants to implement the insurance program.  The Seventh Circuit noted that "no reason ha[d] been suggested for why the parties would have wanted disputes under [the Shareholder A]greement to be litigated in Bermuda but not disputes under the other pieces of the jigsaw puzzle." *American Patriot*, 364 F.3d at 889.  Here, the different documents are certainly *related* to one another as well, but they were not all executed as part of a single "package" with a single goal.  Moreover, there is an obvious reason why the Band may have contracted to limit suits arising out of the larger bond transaction in Wisconsin federal and state courts, while preserving the option to pursue its so-called "Consultant," Stifel, in Tribal Court.  In contrast, Wells Fargo and the Band apparently agreed to resolve any disputes between them only in Wisconsin federal and state courts, to the express exclusion of the Lac Courte Oreilles Tribal Court as a possible alternative venue.

This conclusion is further strengthened by the fact that the documents themselves draw a distinction between the Bond Purchase Agreement on the one hand, and the Trust Indenture, Bonds and Resolution on the other.  The Bond Purchase Agreement's forum selection clause applies "with respect to any dispute or controversy arising out of *this Agreement* and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith."  (*See* Stipulation Ex. B (dkt. #34) 23 (BPA Version 8 jurisdiction clause) (emphasis added).)  It makes no mention of the Trust Indenture, the 2006 Bonds themselves or the Resolution.  Likewise, the Trust Indenture and Bonds contain *no* explicit reference to the "Bond Purchase Agreement," despite that phrase being *expressly* defined within the Trust Indenture itself.  Rather, the Trust Indenture's forum selection clause applies to "any dispute or controversy arising out of this Indenture, the Bonds or the Bond Resolution," as well as supplements and amendments

30

thereto and transactions in connection therewith.  The 2006A Bond likewise applies to disputes arising out of the Bonds, the Trust Indenture and the Resolution, plus any supplements, amendments or connected transactions.[14]  Thus, the documents themselves support the Band's argument that the Bond Purchase Agreement represents one "core" transaction, while the Trust Indenture, Bonds and Resolution form part of another.

Still, Stifel argues that the language of the forum selection clauses in the Trust Indenture and 2006A Bonds is sufficiently broad to enfold *all* of the bond documents, because it applies not only to disputes "arising out of" the explicitly-listed documents but also to disputes "arising out of" all "transactions in connection therewith."  Certainly, the Seventh Circuit has construed such clauses "quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance."  *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (referencing standard arbitration clause "requiring that 'all controversies and claims' either 'arising out of' or 'relating to' the contract" be settled by arbitration).  But in this case, the Bond Purchase Agreement is not easily deemed "a transaction in connection" with the Trust Indenture, for example, where the Bond Purchase Agreement was explicitly defined in the Trust Indenture but omitted from the forum selection clause, while other defined, seemingly less fundamental, documents are specifically mentioned in that clause.

"When possible, contract language should be construed to give meaning to every word, 'avoiding constructions which render portions of a contract meaningless, inexplicable

---

[14] The Resolution also mirrors this same language and does not refer to the Bond Purchase Agreement explicitly (though it is missing the exclusivity language of the 2006A Bonds and the Trust Indenture and is, therefore, far less important to the present analysis).

or mere surplusage.'" *Md. Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 45, 326 Wis. 2d 300, 786 N.W.2d 15.  To interpret "transaction in connection therewith" to encompass *all* the documents executed as part of the overarching bond transaction would arguably make the references to specific documents meaningless.

Finally, the Confidentiality Agreement, though tangential to the larger bond transaction at issue here, provides additional support for the Band's arguments.  That Agreement includes a forum selection clause of its own and requires Stifel, as the "Consultant," to bring all actions, claims or suits arising in connection with the Confidentiality Agreement in the Lac Courte Oreilles Tribal Court.  No one is suggesting that the Tribal Court Action "arises from" the Confidentiality Agreement, but this clause does further suggest that the parties viewed the relationship between Stifel and the Band as different from that of the other parties to the larger bond transaction.

Of course, Stifel might argue that the court's lengthy discussion here of its reasons for construing the forum selection clauses in agreements between the Band and other parties differently from the less restrictive clauses in the actual agreements between the Band and Stifel at least suggests a dispute of fact remains for trial -- although Stifel makes no such argument, having itself moved for summary judgment.  But this argument would require the court to ignore that *Stifel* has the burden to prove a "clear" waiver of the Band's right to proceed with its claims in Tribal Court.  *Converting/Biophile Labs.*, 2006 WI App 187, ¶ 23. Whatever else the discussion above may demonstrate, it shows as a matter of law that Stifel cannot meet this burden with respect to the specific claims currently alleged against it in that court.

### III. Final Judgment

"[I]t is proper for a court to enter summary judgment for non-moving parties, if no factual dispute exists and if the non-movants are entitled to summary judgment as a matter of law." *Kealey Pharmacy & Home Care Serv., Inc. v. Walgreen Co.*, 539 F. Supp. 1357, 1370 (W.D. Wis. 1982); *see also* Fed. R. Civ. P. 56(f)(1). While sanctioning this procedure, Rule 56 requires a court to give "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f); *see also, e.g., Advantage Consulting Grp., Ltd. v. ADT Sec. Sys., Inc.*, 306 F.3d 582, 588 (8th Cir. 2002) (grant of summary judgment proper only where party against whom judgment is entered was given notice and adequate opportunity to demonstrate why summary judgment should not be granted).

Here, the Band expressly requested that the court enter judgment in its favor in its brief in opposition, relying in part on Stifel's right to enforce the forum selection clauses in the Trust Indenture and 2006A Bonds. (*See* Def.'s Resp. (dkt. #44) 13 n.4; 18.) Stifel was thus on notice of the argument, formally replies and had no obvious reason to withhold any evidence or argument in reply. (*See* Pl.'s Reply (dkt. #49) 5-6.) In an abundance of caution, since the Band did not itself move for summary judgment based on Stifel's inability to meet its burden, the court will nevertheless give Stifel one last opportunity to demonstrate a genuine dispute of material fact remains for trial with respect to the applicability of the forum selection clauses in the Trust Indenture and 2006A Bonds to the pending claims in Tribal Court.

ORDER

IT IS ORDERED that:

1. Plaintiff Stifel, Nicolaus & Company, Inc.'s motion for summary judgment (dkt. #37) is GRANTED IN PART and DENIED IN PART consistent with the opinion above.

2. As to the claim for contractual reformation on the grounds of mistake, the clerk of court is directed to enter judgment for plaintiff.

3. Stifel may have until Friday, June 27, 2014, to make any further evidentiary or legal proffer it may wish to show that the Band is not entitled to judgment as a matter of law on the issue of the Band's right to select Tribal Court as the forum for its pending claims against Stifel. No response is to be filed unless the court concludes Stifel has raised a potentially meritorious argument or fact that would necessitate a response.

4. Consistent with the above, the scheduled trial of this case to begin next Monday, June 23rd is stricken from the court's calendar.

Entered this 19th day of June, 2014.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge